RHODES LOCKWOOD & another, administrators, *vs.* LEWIS
A. ROBERTS.

Suffolk.    March 24, 1898. — May 18, 1898.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Partnership — Accounting — Interest — Evidence of Surviving Partner —
Finding of Master.*

Where, in a suit for an accounting, the testimony of the surviving partner on his
contention that he is entitled to interest on a certain share of the partnership
assets is discredited by the master, if there is nothing to outweigh the master's
finding and the accounts, a decree is properly entered for the administrators of
the deceased partner.

BILL IN EQUITY, filed August 28, 1894, by Rhodes Lockwood
and Arthur Lincoln, special administrators of the estate of
Thomas Niles, who died on May 18, 1894, against Lewis A.
Roberts, surviving partner of the firm of Roberts Brothers, for
a receiver and an accounting. The defendant appealed from
the final decree entered by a single justice of this court, the
nature of which, together with the material facts, appears in the
opinion.

*S. J. Elder*, (*E. A. Whitman* with him,) for the defendant.
*E. W. Hutchins*, for the plaintiffs.

HOLMES, J.    The case has been before a master, and after-
wards before a justice of this court, on the master's report of his
findings and of the evidence. It comes here on appeal from so
much of the final decree only as overrules the third exception to
the master's report, and disallows the defendant's claim for
$8,910.20 interest.

The claim for interest arises in this way. The defendant
Roberts took the deceased partner, Niles, into partnership in an
established publishing business in 1872. The cash and accounts
receivable, amounting to $56,254.43, were treated as cash lent
to the firm, and were credited as cash to Roberts. Certain house
rents also were put in by him as they were collected from time
to time, and also were credited to his account. On the other
side he was charged with the cash which he drew. So long as a

balance remained in his favor upon the account kept in this way, he was credited with interest upon the books, but after that he was not credited with any. In other words, no profits were credited in the account, and all drafts were treated as drawn against the other items above mentioned. The drafts of Niles, on the other hand, necessarily were against profits, as he had nothing else to draw against. But, as there had been no division of profits, almost all the items on his account were debits. The accounts of both partners at the end showed a large debit balance for this reason, although the firm had been making money.

The books were kept by Niles, or by a bookkeeper under his direction, and the defendant says that he did not know how the account was made up, and testifies to an agreement with Niles by which he was to have interest at seven per cent on any money he had in the business over and above what Niles had. A memorandum was found in Niles's handwriting, but unsigned, computing interest at five per cent on yearly balances. The profits were considerable, and of course, if his share had been credited to Roberts or had been set against his drafts, it would have made a great difference in the interest account. This difference is the sum in dispute.

The difficulty with the defendant's claim, so far as it rests on express agreement, is that the master who saw the witness found against it. It is unnecessary to cite cases on the weight due to such a finding. No conclusion can be drawn from Niles's unsigned memorandum. On the other side are the accounts as they were kept in the firm books for a long series of years, or, more specifically, the fact that they show on their face that no interest has been allowed to Roberts since 1875. The master finds that the defendant must have known the fact. There are no general principles which outweigh the reasonable presumptions to be drawn from a long course of accounts uncontrolled by testimony, as we must take these accounts to be in view of the master's finding. *Winchester* v. *Glazier*, 152 Mass. 316, 324, 325. *Harris* v. *Carter*, 147 Mass. 313, 315. It is true that the undivided profits served the uses of capital, and sometimes enabled the firm to lend money at interest, but that is not enough to overcome the books and the master's report.

*Decree affirmed.*