JOHN MAGEE vs. HELENA B. MAGEE & others.

Essex.    March 11, 1919. — June 28, 1919.

Present: RUGG, C. J., LORING, PIERCE, & CARROLL, JJ.

*Trust,* Resulting.  *Partnership.  Equity Jurisdiction,* To enforce resulting trust. *Equity Pleading and Practice,* Parties, Answer, Cross bill, Master: motion for additional findings; report of evidence.  *Equity Jurisdiction,* Plaintiff must come into court with clean hands.

Where three persons were equal owners of certain securities which by agreement among them were exchanged for certain real estate in Montana, the title being taken in the name of two of them at the request of the·third, who informed both of the other two that, when the business was completed, he was to have his one third share; and thereafter and before such conveyance was made of the one third share, both the holders of the legal title died, leaving the third party to the transaction surviving, such third party, by a bill in equity in which all the holders of the legal title are parties defendant, may enforce a resulting trust in a one third undivided interest in the real estate and compel a conveyance to him of such interest.

Two persons made an agreement in writing for the purchase of land from a corporation, under an arrangement whereby they and the brother of one of them should share equally in the enterprise, and, upon the corporation going into receivership, they arranged to carry out the agreement with its successor in title to the land.   Later the three divided equally certain money received from a transaction whereby, each assuming his own expenses, they caused the title holder to sell the land to a party procured by the brother and to pay to them the difference between the price they had agreed to pay and the price paid by the purchaser, and certain securities, also given for the land by the purchaser, were held by two of them for all three.   Subsequently, by agreement among themselves, these securities were exchanged for further land, the title to which was held by two of the three for the benefit of all three.  *Held,* that it could not be said that, in the absence of an agreement that the three should associate together as partners in the enterprise, the foregoing facts constituted them partners.

In the suit in equity above described, a motion by the defendants, who held the legal title to the land as the heirs or in the right of the heirs of the two deceased associates, for leave to amend their answer by setting up the claim that the transaction was one of a partnership, rightly was denied, and a demurrer to a cross bill by the defendants against the plaintiff to quiet the title to the real estate and for an accounting rightly was sustained, because the parties to enforce a partnership claim or a claim to an accounting would be the personal representatives and not the heirs of the deceased associates.

Relief against the plaintiff in a suit in equity, which is sought in the defendant's answer, cannot also be made the subject of a cross bill afterwards filed.

Three persons associated together in a transaction whereby they agreed to purchase land, title to be taken in the name of two of them, and caused it to be

conveyed, instead of to them, to a purchaser found by them, the seller paying them the difference between the price at which they agreed to purchase and the price at which the sale was made. One of the three did not have his name used in the transaction because he sought to procure from the seller of the land a commission for the sale in which he himself benefited to the extent of one third of the profits. Later, the three, in exchange for securities which were owned by all three and were received in the transaction, purchased land from the same seller, title being taken in the name of two so that the name of the third might not appear in a purchase, all three understanding the purpose of the third associate to be the same as before, to procure a commission from the seller. The two who held the legal title subsequently died and their heirs refused to recognize the right of the third to a one third undivided interest in the land so purchased and he was compelled to bring a suit in equity to enforce his rights. *Held,* that the fraud of the plaintiff toward the seller, which was not a fraud upon his associates, was no defence to such suit.

The plaintiff in the suit above described cannot be compelled to pay to the defendants any part of taxes and water rates, which were paid by them and their predecessors in title in relation to the land after a time when the plaintiff made demand for a conveyance of his undivided one third interest.

BILL IN EQUITY, filed in the Supreme Judicial Court on May 9, 1913, to establish a trust in the plaintiff's favor to an undivided one third interest in certain real estate in the State of Montana, the legal title to which stood in the name of the defendants, and praying that they be required to execute and deliver to him a conveyance of an undivided one third interest in the property.

Proceedings in regard to a motion of the plaintiff to strike out a portion of the defendants' amended answer and its allowance, and in regard to a cross bill and the sustaining of a demurrer thereto are described in the opinion.

The suit was referred to a master. Such of the facts found by him as are material to the decision are described in the opinion. The defendants also moved for leave to amend their amended answer by setting up the defence that, because the plaintiff sought to defraud the Bitter Root Valley Irrigation Company into paying him a commission, he could not claim the relief sought; and also moved that the master be instructed to make certain findings and to report the evidence. All of these motions were heard by *De Courcy,* J., and were denied. The single justice then reserved the case for determination by the full court "upon the pleadings, decrees thereon, appeals from said decrees, said motions and the master's report."

*G. R. Nutter,· (H. W. Babb* with him,) for the plaintiff.

*J. M. Maguire,* for the defendants.

CARROLL, J.   In 1906 the plaintiff was employed in the purchase and sale of lands in Montana by the Bitter Root District Irrigation Company, hereinafter called the District Company.   In 1907 Julian M. Dodge and the plaintiff's brother, George M. Magee, made a contract with the District Company for the purchase of three hundred and thirty acres of land and a part payment of $400 was made by George M. Magee.   At or before the time the contract was made, it was agreed that the plaintiff should share equally in the enterprise with his brother and Dodge.   In November, 1907, the District Company went into receivership and later was reorganized.   The new company was called the Bitter Root Valley Irrigation Company, hereinafter referred to as the Valley Company.   After the receiver was appointed the plaintiff opened an office in Chicago for the sale of western lands.   He was not employed by the Valley Company.   This company accepted the contract of the District Company and was ready to convey to George M. Magee and Dodge two hundred and fifty of the three hundred and thirty acres.   In July, 1908, payment was called for under the terms of the contract.   George M. Magee and Dodge then interested one Thacher in the purchase of a large tract of land in the Bitter Root Valley and at their request the plaintiff accompanied Thacher to Montana, at his own expense, and the sale of a thousand acres of land was arranged.   The two hundred and fifty acres comprised in the Dodge-Magee contract was included in this larger tract.

Dodge and George M. Magee made a contract with the Valley Company, by which they were to assign their right to purchase the two hundred and fifty acres to Thacher and his associates and were to receive from the Valley Company $12,500 for this tract at the price of $50 an acre, that being the amount by which the Valley Company's price to Thatcher — $150 an acre — exceeded the price fixed in the Magee-Dodge contract.   This sum of $12,500 was to be paid one third in cash and two thirds in the securities of the Thacher company, which was called Bitter Root Orchard, Incorporated.   The money was paid and was divided equally between George M. Magee, Dodge and the plaintiff, the plaintiff at the same time paying his brother one third of the $400

paid by him.  Each party assumed his own expenses in promoting the Thacher plan.

After some correspondence the Valley Company agreed to convey the remaining eighty acres claimed by Magee and Dodge under the original agreement with the District Company, in consideration of the transfer to it of the securities of the Thacher company.  By deed of January 30, 1909, the Valley Company conveyed to George M. Magee and Julian M. Dodge eighty acres of land in consideration of the release of the securities.  The title was taken in the name of Dodge and George Magee, at the request of the plaintiff, with the understanding that one third of the property should be conveyed to him on his demand.  The plaintiff's bill is brought to establish a trust in his favor of an undivided one third interest in this eighty acre tract, and to require the defendants to execute and deliver to him a conveyance of this one third share.

Dodge and George M. Magee died intestate.  John T. Dodge and Mehitable P. Dodge are the father and mother of Julian M. Dodge.  Helena B. Magee is the widow of George M. Magee.  It is agreed that aside from the question of partnership, the real estate of Dodge belongs to his father and mother and the real estate of George M. Magee belongs to his widow.

When the negotiations for the transfer of the eighty acres were pending, the plaintiff wrote to Dodge saying to arrange it "in your name and George's name, without appearing in it myself," and that when the business was closed, he was to secure his one third portion.  He also wrote his brother: "I wish to keep out of the transaction . . . and after it is all closed, I will have another deed made out, by which you and Julian deed back to me an undivided third interest."

The plaintiff with his brother and Dodge were equal owners of the notes of the Thacher company, which notes constituted two thirds of the profits of the enterprise in which they were engaged.  As the plaintiff owned a one third interest in these securities he furnished a definite part of the consideration for the conveyance of the land to George M. Magee and Dodge.  From these facts a resulting trust arises in the plaintiff's favor of a third interest in the eighty acre tract against the grantees named in the deed.  *Davis* v. *Downer,* 210 Mass. 573, 575.  *Howe* v. *Howe,* 199 Mass.

598, 600. See *Pollock* v. *Pollock*, 223 Mass. 382. All the defendants are before the court and it has jurisdiction to enforce the trust. *Clark* v. *Seagraves*, 186 Mass. 430, 438, 439, and cases cited.

The defendants contend that the three associates were, between themselves, partners. There was not sufficient evidence to support this contention. They were equally to share the losses and equally to participate in the profits, but they did not agree nor intend to become partners. By the agreement of the parties they were to become owners of a tract of real estate and hold the title as tenants in common. The agreement related to a single transaction — to buy a particular piece of land, — and the correspondence shows that Dodge and George M. Magee were not to share in the plaintiff's commissions and whatever their relations may have been to third parties, as between themselves they were not partners. *Wheelock* v. *Zevitas*, 229 Mass. 167. *Williams* v. *Knibbs*, 213 Mass. 534.

The defendants hold the land as the heirs of Dodge and George M. Magee or in the right of their heirs. The personal representatives and not the heirs are the parties to ask for a partnership accounting. *Mason* v. *Mason*, 76 Vt. 287. There was no error in allowing the motion to strike out the part of the defendant's answer based on the allegations of partnership, and the demurrer to the cross bill to quiet the title and take an account between the parties was properly sustained. See *Burnside* v. *Merrick*, 4 Met. 537. If the defendants were entitled to relief for the water rates and taxes paid by them, this relief is sought by the amended answer, and in this respect the cross bill is unnecessary. See *Bogle* v. *Bogle*, 3 Allen, 158.

The plaintiff received a commission from the Valley Company for the sale of the two hundred and fifty acre tract and unsuccessfully attempted to secure a commission for the sale of the eighty acre tract. The defendants contend that the plaintiff cannot recover because of his fraud in concealing from both companies his interest in the joint undertaking in order to recover the commissions.

The master found that the District Company knew the plaintiff was jointly interested with his brother and Dodge in the purchase of the land, and that no concealment was practised on this com-

pany. This evidence is not reported and the finding of the master must stand.

The Valley Company knew that the plaintiff was part owner of the two hundred and fifty acres, and with this knowledge paid him a commission on the sale. It was further found that the plaintiff did not keep secret from this company his participation in the speculation; that he did attempt to conceal from the Valley Company the fact that he was part owner of the eighty acres, in order that he might secure a commission on this sale; that "while the officers of the Valley Company knew of the plaintiff's interest with Dodge and George M. Magee, it was not entirely clear that the company was conveying the eighty acres because of any obligation under the agreement . . . and the sale of the eighty acres may have had to some extent the aspect of a new transaction." The plaintiff was unsuccessful in his attempt to collect this commission; and it appeared that both Dodge and George M. Magee knew that the plaintiff was seeking to keep from the company his connection with the transaction, and in order to do this the co-operation of his associates was necessary.

Even if this attempt amounted to a fraud on the Valley Company it was not a fraud on his brother and Dodge for they knew of the attempt and purpose of the plaintiff. And further, the plaintiff does not seek relief from a fraud or to enforce an agreement based on fraud. The transaction which he seeks to enforce did not result from fraud. Even if a fraud were attempted on the Valley Company, it is not a defence to the plaintiff's bill; his case is made out without reference to this fraud, and the defendants cannot deprive him of his rights in the land because of the concealment practised on a third party. *Murphy* v. *Moore*, 228 Mass. 565. *Lufkin* v. *Jakeman*, 188 Mass. 528.

The taxes and water rates from November 2, 1909, to November 28, 1916, have been paid by the defendants. In March, 1909, the plaintiff wrote to Dodge asking for a deed of his share and also wrote to the administrator of his brother's estate. The land was unproductive until 1916, when it was leased. It does not appear what rentals were received and there was no evidence that any effort was made to make the land productive until that time. The legal title is in the defendants. They have been in possession of the land which they have held adversely to the plaintiff and

have received rents and profits, and there is no reason why the plaintiff should now be compelled to contribute to the payment of these taxes and water rates. *Sunter* v. *Sunter,* 204 Mass. 448, 454. *Clute* v. *Clute,* 197 N. Y. 439. *O'Hara* v. *Quinn,* 20 R. I. 176.

There was no error in refusing the defendants' motion that the master be instructed to make additional findings and report the evidence. *Cook* v. *Scheffreen,* 215 Mass. 444, 448.

A decree is to be entered for the plaintiff, directing the defendants to convey to the plaintiff one undivided third part of the land in controversy with costs.

*So ordered.*